

MAR 1 7 2017

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                          Criminal No. 3:16cr137

YERWIN HERNANDEZ ORDONEZ,

           Defendant.

## MEMORANDUM OPINION

This matter is before the Court on DEFENDANT'S MOTION FOR LEAVE TO TAKE RULE 15 DEPOSITIONS (ECF No. 35) (the "Deposition Motion"), seeking leave to depose Josue Giron ("Giron"),[1] Elmer Lopez ("Lopez"), and Yeris Hernandez Ordondez ("Yeris"), the Defendant's brother. For the reasons set forth below, the motion will be denied.

## BACKGROUND

Yerwin Hernandez Ordonez ("Ordonez") is charged with Conspiracy to Commit Murder in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(5), Murder in Aid of Racketeering, in violation of 18 U.S.C. §§ 1959(a) and 2, and Use of a Firearm

---

[1] The papers filed by Ordonez identify this prospective witness using three different names: Josue Gibron, Josue Gabriel and Josue Giron. During a telephone conference with the parties, when the Court inquired into the name of the individual, defense counsel identified the prospective witness as "J-I-R-O-N"; however the majority of the papers filed by defense counsel refer to the witness as Josue Giron; therefore, for purposes of this opinion, the Court will refer to the prospective witness as Josue Giron.

During a Crime of Violence Causing Death to Another, in violation of 18 U.S.C. §§ 924(c)(1)(A), (j) and 2.   Trial is scheduled for May 15, 2017.

The charges were brought by way of an Indictment (ECF No. 7) that has now been superseded.   The Superseding Indictment (ECF No. 73) (hereinafter SSI) makes no substantive changes to the counts alleged against Ordonez. A summary of the facts that form the basis for the charges provide the context necessary for resolving the Defendant's Deposition Motion.

To begin, it is alleged that, at the time of the offenses in July 2014, Ordonez (a/k/a "Probador") was a member of a gang, La Mara Salvatrucha, commonly known as MS-13.   MS-13 allegedly operates in the United States by way of "cliques" or "sets" run by the "First Word" whose assistant is the "Second Word."   (SSI at ¶ 7).   The Government alleges that, in order to secure membership in MS-13, an aspiring recruit must be subject to a violent beating by other gang members while one gang member counts to 13.   (SSI at ¶ 3).   Violence, including murder, was used as a means of punishing rival gang members or "chavalas," as well as MS-13 members who cooperated with law enforcement.[2]

The basis of all charges against Ordonez arise out of an alleged agreement that he made with other MS-13 members and MS-

[2] All of this information is alleged in the Indictment and the Superseding Indictment.

13 recruits to kill Osbin Hernandez-Gonzales, who was thought to be cooperating with and a member of a rival gang. Ordonez and other MS-13 members allegedly confronted Gonzales about his gang membership at a house rented by Ordonez. Gonzales fled but was located at a park near the James River. Ordonez and other MS-13 members drove to the park in Ordonez's van to kill Gonzales. When they located Gonzales, he again fled, but Ordonez chased him and, after reassuring him that all was well, lured Gonzales to an area in the park where others MS-13 members waited to kill him. Gonzales was then shot to death by members of MS-13.

The briefing papers disclose that, as part of his defense, Ordonez intends to offer evidence that he was not a member of MS-13. To that end, defense counsel represents that two of the witnesses to be deposed, Giron and Lopez, rented a house with Ordonez, the house where, on July 11, 2014, MS-13 members allegedly confronted Gonzales about his affiliation with the other gang. This is also the alleged location at which the murder of Gonzales was planned and was set in motion. According to defense counsel, Giron and Lopez will testify about the "circumstances surrounding (1) Defendant's renting the house, (2) the departure of Defendant and themselves from the house; (3) the circumstances by which the members of the Sailor Set came to meet Defendant and his two roommates and conduct clique activities at the house; and (4) Defendant's departure from the

3

[] house and from Richmond." (Def's Motion, ECF No. 35, 2). Both witnesses will testify "that Defendant never had associated with MS-13 members prior to his renting the house." Id.

Additionally, it is represented that Yeris, the third witness to be deposed, will testify as to "(1) the circumstances under which Defendant came to rent the house; (2) that Defendant had never associated with MS-13; (3) that Defendant complained about the MS-13 members hanging out in his house; and (4) the circumstances of Defendant's departure from the house and from Richmond." (Def's Motion, 2). All of this testimony is asserted to be relevant to the defense theory that Ordonez simply was not a member of MS-13. Also, the defense represents that Yeris will testify that he was unfamiliar with the Sailor Set before Ordonez moved into the house and that "Defendant told [Yeris] they [the Sailor Set] were always threatening him and he was depressed", that the members controlled Defendant, used his car, and called him constantly. (Def's Reply, ECF No. 61, 4-5). Giron, it is said, will testify that the MS-13 members kept Ordonez's car and on the night the MS-13 members "jumped the two young men into the gang, Defendant never left the house." Id. Lopez will testify that they "did not like the MS-13 members hanging out at the house, [but] there was nothing they could do about it." Id.

4

The Deposition Motion is based on the representation of defense counsel that the three prospective witnesses, Giron, Lopez, and Yeris, have advised that they are illegally in the United States and that they believe that, "if they come to court to testify, they will be arrested, they will likely be prosecuted, and they will be deported." (Def.'s Motion, 2). To show that those apprehensions are well-founded and reasonable, such that Rule 15 depositions are proper, Ordonez cites to several newspaper articles that discuss the arrest of illegal immigrants and the asserted general apprehension of illegal immigrants in the wake of governmental statements about future enforcement of the nation's immigration laws.

The Government has pointed to additional facts that, in its view, are significant to resolving the Deposition Motion. First, the Government explains that all three witnesses are subject to compulsory process by way of subpoena and that no subpoenas have been either issued or served. The defense does not dispute this point, but says that the witnesses have said they will not respond to a subpoena.

Second, the Government advises that its agents know the location of Lopez and have been to an address believed to be the residence of Yeris. Agents have communicated with both Lopez and Yeris and, according to the Government, Lopez has informed its agents that he is willing to attend trial and to testify.

The Government thinks it significant that, although it has been in communication with Lopez and Yeris for months, it has not arrested them.   In a telephone conference, the Government represented that the prosecution team (consisting of members of the Office of the United States Attorney for the Eastern District of Virginia, the Department of Justice, Homeland Security Administration, and the FBI) has neither the plan nor the intention to arrest any of the three prospective witnesses if they appear to testify in this case.[3]   Nor, says the Government, are any of the prospective witnesses encompassed within the enforcement activity by the Homeland Security Administration, which the defense asserts to have given rise to the apprehension that the witnesses claim to have.   The defense has not shown otherwise.

The foregoing is the factual context in which the Deposition Motion must be assessed and to which the applicable law must be applied.

## ANALYSIS

"[D]epositions in criminal proceedings, unlike their civil counterparts, are the exception not the rule; they are in other words, disfavored."   United States v. Rosen, 240 F.R.D. 204,

---

[3] The lead prosecutor can speak only for the prosecution team, but has agreed to determine whether the appropriate government agency can also make a similar representation to this Court.

208 (E.D. Va. 2007).   Nonetheless, Fed. R. Crim. P. 15,

provides, in relevant part, that "[a] party may move that a

prospective witness be deposed in order to preserve testimony

for trial.   The court may grant the motion because of

_exceptional circumstances_ and in the _interest of justice_."   Fed.

R. Crim. P. 15(a)(1).[4]

     In _United States v. Rosen_, the Court explained that:

> The "exceptional circumstances" and
> "interests of justice" limitations in the
> Rule's text are usefully elucidated in the
> Advisory Committee Note, which states that
> courts should <u>grant depositions only "if it</u>
> <u>appears that (a) the prospective witness</u>
> <u>will be unable to attend or be prevented</u>
> <u>from attending the trial, (b) the</u>
> <u>prospective witness' testimony is material,</u>
> <u>and (c) the prospective witness' testimony</u>
> <u>is necessary to prevent a failure of</u>
> <u>justice</u>."  Rule 15, Fed.R.Crim.P., Advisory
> Committee Note. Unless these conditions are
> met, Rule 15 depositions are not
> appropriate, whether in the U.S. or abroad.
> But if these three criteria are satisfied,
> the depositions should be ordered, assuming
> appropriate compulsory process is available.

240 F.R.D. 204, 208 (E.D. Va. 2007) (emphasis added).   Although

these three requirements are important to the analysis required

by Rule 15, they do not "exhaust the 'meaning of exceptional

circumstances.'"   _United States v. Jefferson_, 594 F. Supp.2d

655, 625 (E.D. Va. 2009) (citing _United States v. Fuentes-_

_Galindo_, 929 F.2d 1507, 1509 (10th Cir. 1991)).   That is because

---

[4] There are no Fourth Circuit decisions that address the Rule 15 exceptional circumstances provision.

courts are required to exercise their "'discretion in determining whether a deposition should be taken under the particular circumstances presented.'" Id. In so doing, courts will "ensure that Rule 15(a) depositions are permitted only in the rare instances or exceptional circumstances contemplated by the Rule." United States v. Jefferson, 594 F. Supp.2d at 665.

> [O]rdinarily, exceptional circumstances exist within the meaning of Rule 15(a) when the prospective deponent is unavailable for trial and the absence of his or her testimony would result in an injustice.
>
> ***
>
> When a prospective witness is unlikely to appear at trial and his or her testimony is critical to the case, simple fairness requires permitting the moving party to preserve the testimony – by deposing the witness – absent significant countervailing factors which would render the taking of the deposition unjust.

United States v. Drogoul, 1 F.3d 1546, 1552 (11th Cir. 1993).

"The principal consideration guiding whether the absence of a particular witness's testimony would produce injustice is the materiality of that testimony to the case." United States v. Drogoul, 1 F.3d at 1552. And, the witness's availability to testify is another "critical consideration" in resolving a request to take a deposition. United States v. Jefferson, 594 F. Supp.2d at 665.

These basic principles, materiality and availability, inform the analysis of the record. Each will be considered in turn.

## A.   Materiality

Rule 15 depositions are available only to preserve material testimony.  If the forecasted testimony is not material, Rule 15 should not come into play.  "In the Rule 15 context, materiality has the same meaning that the Supreme Court gave the term in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny, namely, that the evidence or testimony must be exculpatory, and not corroborative or cumulative of other evidence."   United States v. Jefferson, 594 F. Supp. 2d 655, 667 (E.D. Va. 2009) (internal citations omitted). Therefore, it is necessary to consider whether the forecasted testimony is exculpatory, in that it "tends to negate an element of the crime or to establish a defense, and [] whether it is cumulative of other evidence."   Id. at 667 (quoting United States v. Rosen, 240 F.R.D. 204, 209 (E.D. Va. 2007)).

"The first step in the materiality analysis is to identify the elements of the crime; the next is to outline the forecasted testimony; the final step is to compare the elements of the forecasted testimony to ascertain whether the forecasted testimony negates any element of the charged crime or establishes a defense."   Rosen, 240 F.R.D. at 209.  If testimony

9

is exculpatory, it is "necessary to consider whether it is cumulative of other existing and available evidence." Jefferson, 594 F. Supp. 2d at 667 (internal citations omitted).

In this case, Defendant is charged with Conspiracy to Commit Murder in Aid of Racketeering under 18 U.S.C. § 1959(a)(5), Murder in Aid of Racketeering, under 18 U.S.C. §§ 1959(a)(1) and 2, and Use of a Firearm During a Crime of Violence Causing Death to Another 18 U.S.C. §§ 924(c)(1)(A), (j). Each charge has an element, or part of an element, that involves membership in MS-13, aspiration to membership in MS-13, and/or aiding members of MS-13. The forecasted testimony of all three witnesses, if admissible, would tend to negate those elements of the charges. To that extent, some of the forecasted testimony would be considered exculpatory.

Of course, to be material, testimony must be admissible. Some of the forecasted testimony regarding Ordonez's lack of membership in MS-13, as presented in the defense briefings, is hearsay and likely would not be admitted. Other aspects of the forecasted testimony likely would be admissible, depending largely on whether an appropriate foundation is laid (something that does not appear in the briefings). Also, the testimonial proffer made by the defense bespeaks that some, but not all, of the testimony about Ordonez's membership in MS-13 will be cumulative. Considered as a whole, and measuring the testimony

against the elements of the charged offenses, the defense has met its Rule 15 burden on the materiality of the testimony by all three witnesses respecting Ordonez's membership in MS-13.

Evidence that provides a defense is also exculpatory and thus material.   The forecasted testimony of Giron smacks of alibi evidence.   And, during the briefing process, the defense provided a Notice of Alibi (ECF No. 80).   According to that notice, both Giron and Lopez, will offer testimony in support of an alibi defense.[5]   Thus, the forecasted testimony meets the materiality requirement of Rule 15 for that reason as well.

## B.   Unavailability

Rule 15 permits a deposition only if the witness is unavailable to testify at trial.   A "potential witness is unavailable for purposes of Rule 15(a) . . . whenever a substantial likelihood exists that the proposed deponent will not testify at trial."   United States v. Drogoul, 1 F.3d at 1553.   It is the burden of the moving party to prove unavailability, but, as Ordonez correctly points out, a party need not make a "conclusive showing of 'unavailability' before a deposition can be taken."   United States v. Drogoul, 1 F.3d at

---

[5] That notice does not contain all the information that is required by Fed. R. Crim. P. 12.   The Court makes no judgment respecting whether those deficiencies preclude the taking of depositions, leaving that for another day.

1553 (citing <u>United States v. Sines</u>, 761 F.2d 1434, 1439 (9th Cir. 1985)).[6]

"The moving party may demonstrate the probable unavailability of a prospective deponent 'through affidavits or otherwise.'" <u>United States v. Drogoul</u>, 1 F.3d at 1553 (citation omitted). It is the Court's task to "assess unavailability of a potential witness by carefully examining all the reasonably reliable information and then [making] a reasoned judgment as to a person's availability." <u>United States v. Jefferson</u>, 594 F. Supp.2d at 666.

Here, the defense has offered no affidavits from the prospective witnesses or otherwise to demonstrate unavailability. Instead, the assertion of unavailability is predicated upon the statements of defense counsel in briefs that the witnesses "reasonably believe that, if they come to court to testify, they will be arrested, they will likely be prosecuted, and they will be deported. They have advised counsel they are unwilling to come to court and suffer these consequences." (Def.'s Motion, 4). Further, defense counsel, again in briefs, has stated that "counsel asked if they would come to court if they were served with a subpoena and they said they would not."

---

[6] However, "[i]f the party taking the deposition seeks to introduce it as evidence at trial, he will have to demonstrate at that time that the deponent is unavailable." <u>United States v. Sines</u>, 761 F.2d 1434, 1439 (9th Cir. 1985).

(Def's Reply, 2).  Defense counsel is an officer of the Court and therefore his representations will be accepted as part of the record on the unavailability analysis.[7]

However, the record also shows, through the representation of Government counsel (also officers of the Court) in briefs, that representatives of the "Department of Homeland Security ("HIS"), which handles the arrest of illegal immigrants, have visited Mr. Lopez at his place of employment and his residence. He was not arrested or threatened with arrest should he come to court."  (Gov's Resp., ECF No. 49, 4).  Also, Government counsel represents that Lopez "has indicated that he is not afraid to appear in court."  Id.

Government agents also have been in communication with Yeris, at Ordonez's request.  In fact, Ordonez actually supplied the agents with the contact information for Yeris.  The agents then communicated with Yeris and attempted to visit Yeris at an address believed to be his residence, but he was not home. There has been no effort to arrest him.  (Gov's Resp., 5).

Defense counsel says that he does not know the whereabouts of the witness, Giron, but that he can reach Giron through an intermediary.  The Government has advised that it does not have

---

[7] It is not necessary at this stage to decide whether assertions in briefs are a sufficient showing of unavailability.

Giron's address or telephone number.   (Def's Reply to Gov's Resp., ECF No. 79, 3).

The record establishes that all three prospective witnesses are within the subpoena power of the Court.[8]   The record also shows that the defense has not sought the issuance of subpoenas for any of the three prospective witnesses.

There having been no threats of arrest made and no efforts to arrest the prospective witnesses, the defense predicates its unavailability argument on: (1) the Trump administration's promise to enforce the nation's immigration laws; and (2) the view that recent media reports relating to the arrest of illegal immigrants make it likely that the witnesses would not appear even if subpoenaed.   Those reports, says the defense, make reasonable the asserted apprehension of the witnesses and confirm that they will not be available to testify.   In its most recent filing, the defense argues that what matters is whether the witnesses "would perceive that they might be detained" if they appear to testify in response to a subpoena.   (Def's Reply to Gov's Resp., 2).

The defense position equates apprehension and perception with unavailability.   But, the fact remains that all three

---

[8] Fed. R. Crim. P. 17(e)(1) provides that in the United States, "A subpoena requiring a witness to attend a hearing or trial may be served at any place within the United States."

witnesses are within the subpoena power and could be served because their whereabouts are known or can be readily ascertained by defense counsel.[9]    Thus, they are available insofar as availability is determined by the amenability to subpoena.  And, the amenability to compulsory process, although not dispositive of availability, is a highly significant factor in the availability calculus.

As the defendant argues, in certain cases, courts have allowed Rule 15 depositions without requiring a party to subpoena a witness. See United States v. Sindona, 636 F. 2d 792, 803 (2d Cir. 1980) ("None of the four witnesses were subject to subpoena.").    In United States v. Ramos, 45 F.3d 1519, 1523 (11th Cir. 1995), the Ninth Circuit explained that "a substantial likelihood of unavailability can be found when the proposed deponent is beyond the subpoena powers of the United States and has declared his unwillingness to testify at trial, or even having declared willingness to testify cannot be subpoenaed if he changes his mind."

However, the evidence of unavailability of the proposed witnesses in this case simply is not comparable to the evidence

---

[9]  In a telephone conference with the Court, defense counsel represented that he knows the whereabouts of Lopez and Yeris and that he can communicate with Giron by telephone through an intermediary.    Based on the information provided by defense counsel, it appears that all three have met with defense counsel in his office in the Richmond area.

of unavailability in the decisions on which Ordonez relies. The depositions sought in those cases were allowed when subpoenas were not issued because the witnesses were outside the jurisdiction of the Court, and, for that reason, a subpoena could not be served on the witness. For example, in Sindona, two of the witnesses refused to come to the United States. Sindona, 636 F. at 803 (2d Cir. 1980); see also United States v. Sines, 761 F.2d 1434, 1439 (9th Cir. 1985) ("[I]t was clear by the time the United States moved to take Steneman's deposition that he would likely be incarcerated in Thailand for a significant number of years and would not be permitted to leave that country to testify against Sines."); United States v. Farfan-Carreon, 935 F.2d 678, 679 (5th Cir. 1991) ("defense counsel declared in open court when questioned by the judge that Pilingas was a resident of Mexico, and thus beyond the subpoena power of the court."). In United States v. Jefferson, 594 F. Supp. 2d 655, 666, the court found that defendant had failed to show that a witness was unavailable because "defendant did not show that [the witness] cannot be served or will refuse to comply with the subpoena."

Here, the witnesses are within the subpoena power, and they can be served with process. Further, one of the witnesses, Lopez, has advised that he is willing to attend trial. And, another witness, Yeris, has been in communication with the

Government. The third witness, Giron, has met with defense counsel and is reachable by telephone. Thus, in the usual sense of the word, the witnesses are available.

The defendant has supplied no authority for predicating a finding of unavailability within the meaning of Rule 15 on a claim that a witness apprehends the consequences of being illegally in the United States, nor has the Court located such authority. That is not surprising because unavailability, as defined in the decisions involving Rule 15, means that a witness is beyond the subpoena power of the court or, if within the subpoena power, has refused to appear. The record permits neither finding here.

It is true that the moving party's burden does not require proof of unavailability with certainty. <u>United States v. Drogoul</u>, 1 F.3d at 1553. However, on this record, the showing made by the defense amounts to surmise and that is not sufficient to find that these witnesses are unavailable to testify at trial.

Given the record, the defense must serve each witness with a subpoena because on the facts, each is amenable to the subpoena process. And, if a witness desires not to appear, the witness can move to quash the subpoena. If the basis for such a motion is apprehension of arrest, the motion would have to rely on affidavits and proofs, not media reports that have nothing to

do with the witness.    Whether a motion thusly supported would
permit a finding on the interest of justice, or unavailability
is a matter for another day.[10]

## C.    Exceptional Circumstances

Finally, the Court considers the changes to Rule 15 whereby
a Court may order Rule 15 depositions given "exceptional
circumstances."   "This change was effectuated to ensure that the
trial court exercised its discretion in determining whether a
deposition should be taken under the particular circumstances
presented."   United States v. Fuentes-Galindo, 929 F.2d 1509
(10th Cir. 1991).   However, that discretion must be exercised
consistent with the principle that "depositions are permitted
only in the rare instances or exceptional circumstances
contemplated by the Rule."   United States v. Jefferson, 594,
F.Supp.2d 655, 665 (E.D. Va. 2009).

The contention in this case is that exceptional
circumstances may be found because of the new administration's
enforcement of the nation's immigration laws and because of the
apprehension of the prospective witnesses that they, who are all
in the country in violation of those laws, could be arrested and

---

[10] It is defense counsel's responsibility to serve subpoenas on
witnesses who are believed to have material testimony.    If the
served witness wishes to be relieved of the subpoena, he must be
represented by other counsel in seeking to avoid appearance.
Defense counsel could then renew the request to proceed under
Rule 15.

deported if they appear to testify.  The same theory serves as the predicate for the defense contention that the record permits a finding that it is in the interest of justice to allow the taking of videotaped depositions with the witnesses situated at an unknown location and counsel situated at another location.

It is difficult to come to grips with the notion that enforcement of the law constitutes an exceptional circumstance within the meaning of Rule 15.  Nothing in its text, its history, or its past application by the courts counsels such a finding.[11]  And, a finding to that effect could have far-reaching consequences.  In any event, the Court can make no finding of exceptional circumstances on the facts presented in the record. Moreover, given the assurances from the prosecution team that it will not arrest the witnesses if they respond to a subpoena, and the fact that the witnesses are not within the category of illegal immigrants who are the subject of the newspaper articles on which the defense relies, the asserted apprehensions by the witnesses cannot be adjudged reasonable on the current record.

---

[11] The decisions on which the defense relies might warrant such a finding if these witnesses had been arrested and were to be deported before the trial.  But that is not the case here.

19

## CONCLUSION

For the foregoing reasons, the DEFENDANT'S MOTION FOR LEAVE TO TAKE RULE 15 DEPOSITIONS (ECF No. 35) will be denied.

It is so ORDERED.

_____ /s/ _____

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:  March 17, 2017

20