IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                          Criminal No. 3:16CR137

YERWIN IVAN HERNANDEZ-ORDONEZ

### MEMORANDUM OPINION

Yerwin Ivan Hernandez-Ordonez ("Ordonez"), a federal inmate proceeding pro se, filed this MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY ("§ 2255 Motion," ECF No. 202). Ordonez contends that his trial counsel was ineffective, thereby violating his Sixth Amendment right to counsel.[1] Specifically, Ordonez demands relief because:[2]

> Claim One:   "Counsel's erroneous advice regarding Movant's sentence exposure as it related to Count Three of the Indictment induced Movant to plead guilty." (ECF No. 203, at 5.)
>
> Claim Two:   "Counsel[] fail[ed] to inform Movant of the duplicitous nature of the Indictment and fail[ed] to move to dismiss the Indictment." (Id. at 8.)

---

[1] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

[2] The Court corrects the capitalization, punctuation, and spelling and omits the emphasis in the quotations from the parties' submissions. The Court employs the pagination assigned by the CM/ECF docketing system.

Claim Three:    "Counsel[] fail[ed] to discuss with his
                client, or have the district court explain the
                necessary elements for Movant to be convicted
                of aiding and abetting the crime."  (Id. at
                11.)

The Government has responded, asserting that Ordonez's claims lack
merit.  (ECF No. 205.)

Additionally, Ordonez submitted MOVANT'S MOTION FOR LEAVE TO
SUPPLEMENT HIS MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE
PURSUANT TO RULE 15 OF THE FEDERAL RULES OF CIVIL PROCEDURE
("Motion to Supplement," ECF No. 206), wherein he contends that he
is entitled to relief in light of the Supreme Court's decision in
United States v. Davis, 139 S. Ct. 2319 (2019).  For the reasons
set forth below, Ordonez's § 2255 Motion (ECF No. 202) and his
Motion to Supplement (ECF No. 206) will be denied.

## I.   PROCEDURAL HISTORY

On November 7, 2017, a grand jury charged Ordonez in a
Superseding Indictment with conspiracy to commit murder in aid of
racketeering in violation of 18 U.S.C. § 1959(a)(5) (Count One);
murder in aid of racketeering, in violation of 18 U.S.C.
§ 1959(a)(1) and 2 (Count Two); and use of a firearm during a crime
of violence causing death to another in violation of 18 U.S.C. §
§ 924(c)(1)(A), (j) and 2 (Count Three).  (ECF No. 73, at 1-11.)
On May 5, 2017, Ordonez entered into a Plea Agreement and agreed

to plead guilty to Count Three of the Superseding Indictment. (ECF No. 129, at 1.)

In conjunction with his plea, Ordonez signed a Statement of Facts wherein he agreed "that the factual allegations contained in this Statement of Facts and in Count Three of the Superseding Indictment are true and correct, and that the United States could have proven them beyond a reasonable doubt." (ECF No. 130, at 1.) Specifically, Ordonez acknowledged that:

> 1. At all times relevant to this indictment, the defendant, YERWIN IVAN HERNANDEZ-ORDONEZ, also known as "Probador," was associated with the criminal organization La Mara Salvatrucha, also known as MS-13. During the time of the criminal conduct in this case, MS-13, including its leadership, membership, and associates, is an international organization that constitutes an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that is engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The enterprise, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely acts involving murder in violation of the laws of the Commonwealth of Virginia.
> 2. On or about July 24, 2011, in the Eastern District of Virginia and elsewhere within the jurisdiction of this Court, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, and to aid, abet, counsel, command, induce, and cause others to gain entrance to and maintain and increase position in MS-13, the defendant YERWIN IVAN HERNANDEZ-ORDONEZ did unlawfully, knowingly and intentionally use, carry, and discharge a firearm during and in relation to a crime of violence prosecutable in a court of the United

States, specifically, murder in aid of racketeering, in violation of Title 18, United States Code, Section 1959(1), and in the course of this violation caused the death of Osbin Noel [Hernandez-Gonzalez] through the use of a firearm, which killing was murder, as defined in Title 18, United States Code, Section 1111, in that the defendant YERWIN IVAN HERNANDEZ-ORDONEZ, and others, with malice aforethought did unlawfully kill and murder Osbin Noel Hernandez-Gonzalez by shooting him with a firearm, and did aid, abet, counsel, command, induce, and cause another to commit that offense, in violation of the laws of the Commonwealth of Virginia.

    3.    MS-13 recruits are indoctrinated into MS-13 rules, which are ruthlessly enforced.  One prominent rule is that MS-13 gang members are to attack rival gang members, also known as "chivalas."  Further, members of MS-13 gain respect and advance in the gang by committing acts of violence.  Recruits are "jumped" into the gang by being physically beaten by members while a member counts to 13.

    4.    On the evening of July 23, 2011, the defendant YERWIN IVAN HERNANDEZ-ORDONEZ and members of the Sailors clique of MS-13, in Richmond, Virginia, suspected that Osbin Noel Hernandez-Gonzalez was a member of the Latin Kings, a rival gang.  Members of the Latin Kings are considered chivalas by MS-13.

    5.    The leader of the Richmond Sailors clique decided to have MS-13 members kill Osbin Noel Hernandez-Gonzalez with a firearm, and determined that this would be part of an initiation rite for two recruits to the Richmond Sailors clique.  The leader chose the defendant YERWIN IVAN HERNANDEZ-ORDONEZ and a co-conspirator member of the MS-13 murder to ensure that the recruits carried it out.

    6.    Late on the night of July 23, 2011 into the curly morning hours of July 24, 2011, the two recruits drove Osbin Noel Hernandez-Gonzalez to an area near the 8200 block of Riverside Drive, Richmond, Virginia, for the purpose of murdering him. The defendant YERWIN IVAN HERNANDEZ-ORDONEZ and the selected Richmond Sailors MS-13 co-conspirator followed in a second vehicle to ensure that the recruits killed Osbin Noel Hernandez-Gonzalez.

    7.    Once in the vicinity of the 8200 block of Riverside Drive, one of the MS-13 recruits attempted to shoot Osbin Noel Hernandez-Gonzalez, but the firearm jammed.  The co-conspirator member of MS-13, using a

different gun, then shot Osbin Noel Hernandez-Gonzales, but did not kill him.

8.    Osbin Noel Hernandez-Gonzalez then attempted to flee; however, the defendant YERWIN IVAN HERNANDEZ-ORDONEZ chased after him, calmed him, and brought him back to the group.

9.    Thereafter, the two recruits shot and killed Osbin Noel Hernandez-Gonzalez.

10.    Later that same day, July 24, 2011, the two recruits were jumped in to the MS-13 Sailor clique in Richmond, Virginia, as a result of their participation in the murder of Osbin Noel Hernandez-Gonzalez.

11.    The defendant YERWIN IVAN HERNANDEZ-ORDONEZ committed the acts described herein unlawfully, knowingly, and willfully and without legal justification or excuse with the specific intent to do what the law forbids, and not by mistake, accident, or any other reason.

(Id. at 1-5.)

On November 15, 2017, the Court sentenced Ordonez to 365 months of imprisonment.  (ECF No. 171, at 2.)

## II.   INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'"  Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689).

The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Id. at 697.

In the context of a guilty plea, the Supreme Court modified the second prong of Strickland to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). The mere assertion by Ordonez that he would not have pled guilty if he had received better assistance from counsel is not dispositive of the issue. See United States v. Mora-Gomez, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (internal citation omitted) (citing Hill, 474 U.S. at 59-60). The Court looks to all the facts and circumstances surrounding the plea of guilty, including the

6

likelihood of conviction and any potential sentencing benefit to pleading guilty. See id. at 369-70.

In conducting the foregoing inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). In light of the strong presumption of verity that attaches to the sworn declarations made by Ordonez during the plea proceedings, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (internal citations omitted). Thus, the Fourth Circuit has admonished that, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22. No circumstances exist here that would lead the Court to consider the sworn statements made by Ordonez during the plea colloquy as anything other than truthful.

7

A.   **Claim One – Alleged Erroneous Advice Regarding The Sentence**

In Claim One, Ordonez asserts that "[c]ounsel's erroneous advice regarding Movant's sentence exposure as it related to Count Three of the Indictment induced Movant to plead guilty." (ECF No. 203, at 5.)[3] Ordonez contends that "counsel informed him that he had to receive the minimum mandatory sentence of ten years for the discharging of the firearm; that if [the] judge was to sentence him to more than that it would be considered an upward departure; and that the judge would have to give notice of his intent to do that." (Id. at 6.)[4] Ordonez contends that, but [for] this erroneous advice, he would have pled not guilty and insisted on proceeding to trial. (Id. at 7.) Given Ordonez's prior sworn admissions, his current contentions are "patently frivolous [and]

_____

[3] In another portion of Claim One, Ordonez asserts that counsel failed to inform him of the nature of the charge to which he was pleading guilty. (ECF No. 203, at 6.) Specifically, Ordonez contends that had he known he was admitting "that he was guilty of aiding and abetting the murder of Hernandez-Gonzalez he would not have pled guilty and would have instead elected to go to trial because he didn't knowingly aid or abet the murder of the victim." (Id.) The Court will address this aspect of Claim One in conjunction with Claim Three wherein Ordonez contends that he received erroneous advice about the elements of the crime to which he pled guilty.

[4] Elsewhere in his papers, Ordonez acknowledges that counsel "discussed with him that he was subject to a ten-year minimum mandatory sentence with a maximum statutory sentence of life imprisonment for the count." (ECF No. 203, at 5.)

false." Lemaster, 403 F.3d at 221.  (internal quotation marks and citations omitted).

Ordonez admitted that he reviewed and understood the Plea Agreement.  (ECF No. 129, at 11.)   The Plea Agreement clearly stated that Ordonez faced a mandatory minimum of ten years imprisonment and up to life imprisonment upon his conviction of Count Three.  (Id. at 1.)   Ordonez further acknowledged that the Court could sentence him up to life in prison and that the Court would employ Sentencing Guides to determine an advisory sentencing range.  (Id. at 3.)   If Ordonez received a third point for timely acceptance of responsibility, "the parties agree[d] that the appropriate Guideline range in this case is 292-365 months." (Id.) Nevertheless, Ordonez acknowledged that the Court "may impose a sentence above or below the advisory sentencing range, subject only to review by higher courts for reasonableness."   (Id.) Further, Ordonez agreed to waive his right to appeal any sentence. (Id. at 4.)

During the Rule 11 Proceedings, Ordonez again acknowledged that he faced a sentence of between ten years and life for pleading guilty to Count Three. (ECF No. 191, at 11.)   Ordonez further acknowledged that the "question" as to where his "sentence of imprisonment will fall between ten years and life imprisonment" will be answered in part by reference to the sentencing guideline.

(Id. at 13-14.) Ordonez acknowledged that the parties were "going to make a joint recommendation to Judge Payne as to what they think the guideline range is," but that, "Judge Payne is the only one that can decide ultimately what [his] sentence is going to be." (Id. at 16.) Ordonez acknowledged that the parties agreed "that the sentencing range should be 292 months to 365 months." (Id. at 24.) Ordonez swore that no one had promised him that he would receive a particular sentence or a sentencing within a particular sentencing range. (Id. at 17.)

Ordonez current assertions that his guilty plea was made largely in reliance on counsel's alleged representation that the Court could not sentence him above the ten-year mandatory minimum for Count Three without imposing a variant sentence is inconsistent with those prior sworn representations. Ordonez repeatedly acknowledged that the parties believed the appropriate sentencing range was 292 months to 365 months, but that the Court was free to sentence him up to life in prison. Therefore, his current assertions are "patently frivolous [and] false." Lemaster, 403 F.3d at 221. (internal quotation marks and citations omitted).[5]

_____

[5] Ordonez's trial counsel, Amy Austin and Gerald Zerkin, swear that "[a]t no time did we suggest to defendant that he faced just 10 years in prison." (ECF No. 205-1 ¶ 8; ECF No. 205-2 ¶ 8.) Considering the record as a whole, those sworn assertions by counsel are fully credible.

Ordonez fails to demonstrate deficiency of counsel or prejudice. Claim One will be dismissed.

### B.   Alleged Duplicitous Nature Of Count Three

In Claim Two, Ordonez faults counsel for failing to move to dismiss Count Three of the Superseding Indictment on the ground that it was duplicitous. "[D]uplicity is the joining in a single count of two or more distinct and separate offenses." United States v. Burns, 990 F.2d 1426, 1438 (4th Cir. 1993) (citations omitted) (internal quotation marks omitted). Ordonez contends that Count Three charged him with two separate offenses: "Aiding and Abetting the Discharging of a Firearm During and in Relation to Violent Crime, 18 U.S.C. § 924(c)(1)(A)(iii) and 2; and Aiding and Abetting an Offense Resulting in Death in the Course of a § 924(c) violation, 18 U.S.C. § 924(j)(1) and 2 . . . ." (ECF No. 203, at 8.)

"Every element of section 924(c) is also an element of section 924(j); therefore, a person who violates section 924(j) necessarily violates section 924(c)." United States v. Gonzales, 841 F.3d 339, 356 (5th Cir. 2016). A violation of section 924(c), is a lesser included offense of a violation of section 924(j). Stapleton v. United States, 886 F. Supp. 2d 542 544-45 (E.D. Va. 2012). Therefore, the inclusion of the section 924(c) violation in Count Three did not render Count Three impermissibly

duplicitous. See United States v. D'Amico, 496 F.3d 95, 99-101 (1st Cir. 2007) (concluding it was not duplicitous to include attempt and completed extortion in the same count because attempted extortion was a lesser included offense of extortion), vacated on other grounds, 552 U.S. 1173 (2008). Accordingly, Ordonez has failed to demonstrate that counsel performed deficiently or that he was prejudiced by the failure to challenge Count Three as duplicitous. Claim Two will be dismissed.

### C. Counsel's Alleged Erroneous Advice Regarding Aiding And Abetting

In Claim Three, Ordonez complains that neither his counsel nor the Court "explain[ed] the necessary elements for Movant to be convicted of aiding and abetting the crime." (ECF No. 203, at 11.) Ordonez further asserts that:

> Movant did not know, nor was he informed by counsel that he had to have knowledge that the victim was going to be murdered and he had to have intent to bring about the result. Movant further contends that he did not know, nor was he informed by counsel that he had to have knowledge that [the] gun [was] present.

(Id. at 13.) Once again, Ordonez contentions are refuted by the record.

During his Rule 11 Proceedings, the Court specifically discussed the aiding and abetting element with Ordonez.

Court:      Now, have you had a chance to review the charges against you with your lawyers?
Ordonez:    Yes.

12

```
Court:      Now,  have  you  been  able  to  understand
            everything then that you've been charged with?
Ordonez:    Yes.
Court:      Now,  specifically,  here,  as  I  understand  it,
            you intend to plead guilty to count three of
            the  superseding  indictment  that  charges  you
            with the use of a firearm that resulted in the
            death of someone.  Am I right about that?
Ordonez:    Yes, sir.
Court:      And I believe that you aided and abetted in
            that also which meant that you helped someone
            else actually pull the trigger, as I recall,
            not  physically,  but  luring  the  person  over
            where they were shot.
Ordonez:    Yes, sir.
Court:      So  the  element  of  that  offense,  what  the
            government  would  have  to  prove  beyond  a
            reasonable doubt is, is that the person that
            you assisted that utilized a firearm to kill
            somebody; do you understand that?
Ordonez:    Yes.
```

(ECF No. 191, at 10-11.)   Furthermore, as reflected in the

Statement of Facts, Ordonez knew that the MS-13 recruits intended

to kill Gonzalez-Hernandez with a firearm and actively assisted

them in doing so.   Additionally, Ordonez conceded that the

Government could prove those facts beyond a reasonable doubt.

Therefore, it is plain that had Ordonez proceeded to trial, he

would have been convicted on Counts One and Two in addition to

Count Three and faced a significantly longer sentence.   Given this

record,  Ordonez  has  not  demonstrated  that  counsel  acted

deficiently or that, but for some omission of counsel, he would

have pled not guilty and insisted on going to trial.   Accordingly,

Claim Three will be dismissed.

13

A brief comment about the papers submitted by Ordonez is necessary. The simple fact is that every assertion made by Ordonez is flatly refuted by the record as both wrong and untrue. Defendants may be excused for erring on legal analyses, but not for misrepresentations to the Court. Moreover, upon an examination of the MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY and the supporting memorandum (ECF Nos. 202 and 203), the MOVANT'S MOTION FOR LEAVE TO SUPPLEMENT HIS MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO RULE 15 OF THE FEDERAL RULES OF CIVIL PROCEDURE (ECF No. 206), and the MOVANT'S RESPONSE TO GOVERNMENT'S RESPONSE TO MOVANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER § 2255 (ECF No. 207), it appears that the papers submitted by Ordonez were authored by someone else. And that someone, likely with the actual aid of Ordonez, has simply misrepresented material matters to the Court. Any further recurrence of such conduct will be sanctioned.

### III. MOTION TO SUPPLEMENT

Title 18 U.S.C. section 924(c)(1)(A) provides for consecutive periods of imprisonment when a defendant uses or carries a firearm in furtherance of a crime of violence. At the time of Ordonez's conviction, the United States could demonstrate that an underlying offense constituted a crime of violence if it established that the

offense was a felony and satisfied one of two requirements. Namely, the statute defined a crime of violence as any felony:

> **(A)** [that] has as an element the use, attempted use, or threatened use of physical force against the person or property of another [(the "Force Clause")], or
> **(B)** that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense [(the "Residual Clause")].

Id. § 924(c)(3).  The Supreme Court subsequently invalidated the Residual Clause.  United States v. Davis, 139 S. Ct. 2319, 2336 (2019) (holding that "§ 924(c)(3)(B) is unconstitutionally vague").  In his Motion to Supplement, Ordonez asks the Court to "grant him leave to supplement his § 2255 with an additional ground of relief based off of the new rule of law as articulated in Davis." (ECF No. 206, at 2.)

The predicate crime of violence for Ordonez's conviction in Count Three was murder in aid of racketeering activity "in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code Ann. §§ 18.2-32 and 18.2-18," "VICAR Murder," as set forth in Count Two.  (ECF No. 73, at 10, 11.) Ordonez's "VICAR Murder charge in Count [Three] qualifies as a crime of violence under the Force Clause, and neither Davis, nor any [other case], do[es] anything to alter that result."  United States v. Bran, No. 3:12CR131, 2021 WL 4099011, at *5 (E.D. Va. Sept. 8, 2021), appeal dismissed, No. 21-7358, 2022 WL 540643 (4th

15

Cir. Feb. 23, 2022). Accordingly, the Motion to Supplement (ECF No. 206) will be denied as futile. See United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000) (citations omitted).

### IV.  CONCLUSION

For the foregoing reasons, Ordonez's claims will be dismissed. Ordonez's § 2255 Motion (ECF No. 202) and Motion to Supplement (ECF No. 206) will be denied. The action will be dismissed. A certificate of appealability will be denied.

The Clerk is directed to send a copy of the Memorandum Opinion to Ordonez and counsel of record.

It is so ORDERED.

_____ /s/  REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: May  4 , 2022

16