IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                  Criminal No. 3:16cr137

YERWIN IVAN HERNANDEZ-ORDONEZ

MEMORANDUM OPINION

This matter is before the Court on the DEFENDANT'S MOTION FOR REDUCTION IN SENTENCE PURSUANT TO 18 USC § 3582(c)(1)(A) AND THE FIRST STEP ACT (ECF No. 212) which was filed *pro se* (or with the assistance of a jailhouse lawyer) (the "*Pro Se* Motion");[1] the DEFENDANT'S MOTION FOR RELEASE AND RELIEF PURSUANT TO SECTION 603 OF THE FIRST STEP ACT OF 2018 AND 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 222) (the "Counsel Motion"), the DEFENDANT'S MEMORANDUM IN SUPPORT OF REQUEST FOR RELEASE AND RELIEF PURSUANT TO SECTION 603 OF THE FIRST STEP ACT OF 2018 AND 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 223);[2] the RESPONSE OF THE UNITED STATES TO DEFENDANT'S

---

[1] The docket sheet indicates that ECF No. 212 is a motion for relief pursuant to Section 404 of the First Step Act but it is not. It is a Motion for Compassionate Release. Nor could the matter properly be treated as a motion under Section 404 because none of the offenses of conviction were cocaine base offenses.

[2] The Counsel Motion incorporates the *Pro Se* Motion but does not further explain it or elaborate on it and it abandons some of the claims asserted in the *Pro Se* Motion, properly so (ECF No. 222-5).

MOTION FOR RELEASE AND RELIEF PURSUANT TO SECTION 603 OF THE FIRST STEP ACT OF 2018 AND 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 224); and the DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE TO DEFENDANTS MOTION FOR RELEASE AND RELIEF PURSUANT TO SECTION 603 OF THE [sic] STEP ACT OF 2018 AND 18 U.S.C. 3582(c)(1)(A)(i) (ECF No. 225).

## BACKGROUND

Yerwin Ivan Hernandez-Ordonez ("Hernandez-Ordonez") was named in a three count INDICTMENT (ECF No. 7) and a three count SUPERSEDING INDICTMENT (ECF No. 73). The charges involved the activities of a notorious gang known as La Mara Salvatrucha, otherwise known as MS-13. COUNT ONE charged Hernandez-Ordonez with conspiracy to murder Osbin Noel Hernandez-Gonzalez in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5)(a). COUNT TWO charged Hernandez-Ordonez with murder in aid of racketing activity, also involving the murder of Osbin Noel Hernandez-Gonzalez in violation of 18 U.S.C. § 1959(a)(1) and (2). COUNT THREE charged Hernandez-Ordonez with use of a firearm during a crime of violence causing death to another in violation of 18 U.S.C. § 924(c)(1)(A) and (j) and (2).

Hernandez-Ordonez entered a plea of guilty to COUNT THREE. The STATEMENT OF FACTS accompanying the PLEA AGREEMENT (ECF No.

130) admitted that Hernandez-Ordonez was associated with MS-13 at all material times and that MS-13 was an international organization that constituted an enterprise within the meaning of the RICO statutes; that the enterprise engaged in racketeering activity, including, <u>inter alia</u>, murder in violation of the laws of the Commonwealth of Virginia. The STATEMENT OF FACTS also recited that on July 24, 2011, Hernandez-Ordonez "knowingly and intentionally used, carried, and discharged a firearm during and in relation to a crime of violence prosecutable in a court of the United States, specifically murder in aid of racketeering."

According to the STATEMENT OF FACTS, on the evening before the murder (July 23, 2011), Hernandez-Ordonez and others in the MS-13 suspected that Osbin Noel Hernandez-Gonzalez was a member of a rival gang, the Latin Kings. The leader of MS-13 clique (the Sailor Set) decided to have MS-13 members kill Osbin Noel Hernandez-Gonzalez with a firearm. The leader of the Sailor Set chose Hernandez-Ordonez and another co-conspirator member of MS-13 to attend the murder "to ensure that the recruits carried it out." Late in the evening of July 23, 2011 and into the early morning hours of July 24, 2011, the recruits, who were to kill Hernandez-Gonzalez as part of their admission into MS-13, drove the victim to Riverside Drive for the purpose of murdering him and Hernandez-Ordonez and another co-defendant followed in a second

3

vehicle to make sure that the recruits actually killed Osbin Noel Hernandez-Gonzalez. (Id., ¶ 6). The recruits attempted to shoot the victim but the firearm jammed and another conspirator using a different gun then shot the victim but did not kill him. The victim attempted to flee. Hernandez-Ordonez chased the victim, calmed him, and brought him back to the group where he was murdered by the two recruits. In other words, Hernandez-Ordonez saw to it that the victim was in fact killed. See also Presentence Report ("PSR"), ECF No. 215, pp. 6-34). As a result of their participation in the murder of Osbin Noel Hernandez-Gonzalez, the two recruits, later that day, were "jumped into the MS-13 Sailor clique in Richmond, Virginia" (admitted to MS-13).

According to the PSR, the adjusted offense level was 43 and the total offense level was reduced to 40 by virtue of acceptance of responsibility. Hernandez-Ordonez had no countable criminal history points, his only offenses being six driving offenses and one failure to appear offense for which no criminal history points were awarded. Hernandez-Ordonez's Criminal History Category was I and the guideline range was 292-365 months. The statutory maximum punishment for the offense of conviction in COUNT THREE was imprisonment up to life.

The statutory maximum and the guidelines would be the same if Hernandez-Ordonez were to be sentenced now.

4

**Asserted Basis For Compassionate Release**

As is the case with many *pro se* filings, the *Pro Se* Motion is difficult to follow and cites a number of cases without making any points on the basis of the citations and makes some outrageous assumptions such as that Hernandez-Ordonez was not found guilty of a crime of violence. (ECF No. 212, p. 5). The *Pro Se* Motion also asserts that Hernandez-Ordonez was not part of MS-13, a fact which is refuted by the STATEMENT OF FACTS to which he admitted. The *Pro Se* Motion generally appears to try to distance Hernandez-Ordonez from the conduct which he admitted in the STATEMENT OF FACTS.

The *Pro Se* Motion takes a view that the sentence is greatly disproportionate to his actual behavior in the offenses of conviction. That is said to be because Hernandez-Ordonez did not possess a weapon. And the *Pro Se* Motion refers to Hernandez-Ordonez's post-conviction rehabilitative conduct in rather conclusory terms.[3]

---

[3] For reasons that the Court cannot understand, there is an assertion about a change in the law but none that would have any impact on the defendant is cited.

5

The Counsel Motion is somewhat easier to follow. It, like the *Pro Se* Motion, mentions the possibility of COVID-19 and the fact that Hernandez-Ordonez has had COVID-19. However, neither motion does anything to carry Hernandez-Ordonez's burden to show that exposure to COVID-19 is any longer a problem in the prisons or that it has presented a problem that has affected the health of Hernandez-Ordonez much less that there is a reason for granting compassionate release on that ground.

The Counsel Motion also asserts that Hernandez-Ordonez has engaged in post-conviction rehabilitative conduct by taking various classes, including business classes, adult continuing education, HVAC, and suicide companionship classes, and that he has earned his GED. The Counsel Motion also asserts that Hernandez-Ordonez was 25 years old at the time of the shooting and that his youthful age at the time of the crime and lack of immediate involvement in the crime somehow warrant compassionate release.[4] Both the *Pro Se* Motion and the Counsel Motion appear to rely on the decision in United States v. McCoy, 981 F.3d 271 (4th Cir. 2020).

---

[4] Hernandez-Ordonez was born on August 5, 1985 (ECF No. 215, p. 3). The offense of conviction was committed on July 24, 2011. So, Hernandez-Ordonez was almost 26 years old when he committed the offense of conviction.

6

## DISCUSSION

### I. The Statutory Framework

The applicable statute, 18 U.S.C. § 3582(c)(1)(A) provides, in pertinent part, that, upon appropriate motion, the Court "may reduce the term of imprisonment . . . if it finds that—(i) extraordinary and compelling reasons warrant such a reduction." It is settled that the burden is on Hernandez-Ordonez to prove that extraordinary and compelling conditions exist for compassionate release under § 3582(c)(1)(A)(i). United States v. White, 378 F. Supp. 3d 784, 785 (W.D. Mo. 2019).

As the United States Court of Appeals for the Fourth Circuit recently explained:

> Congress authorized "compassionate release" in 18 U.S.C. § 3582(c)(1)(A). That provision begins with the general rule that a "court may not modify a term of imprisonment once it has been imposed." Id. It then describes an exception to that rule, in which courts may consider motions made by defendants who have exhausted their administrative remedies and are seeking a sentence modification. Id.; see also United States v. Bethea, 54 F.4th 826, 831 (4th Cir. 2022). A court can grant a compassionate release motion if it finds that (1) "extraordinary and compelling reasons warrant such a reduction," (2) "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" and (3) that the § 3553(a) factors weigh in favor of granting relief, "to the extent that they are applicable." See § 3582(c)(1)-(2).

7

> Elements one and two are supposed to work together. Because "[§]3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release," the "Sentencing Commission, pursuant to authority granted it by Congress," does so instead. McCoy, 981 F.3d at 276 (quoting § 3582(c)(1)(A)(i))). But that only works when there is an applicable policy statement. . . . Without a policy statement applicable to compassionate release motions made by defendants, the district court had discretion to make its "own independent determination of what constitutes an extraordinary and compelling reason under § 3582(c)(1)(A) . . . ." Id. at 284 (cleaned up).
>
> <u>If</u> a district court <u>finds extraordinary and compelling circumstances</u> warrant a sentence reduction, <u>it must then consider whether the factors in § 3553(a) support such a decrease</u>. The § 3553(a) factors include "the nature and circumstances of the offense" as well as the defendant's history and characteristics, the "kinds of sentences available," and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(1), (3), (6). They also include the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense," to deter criminal conduct, to protect the public and to provide the defendant with appropriate resources such as "medical care" and "vocational training." Id. § 3553(a)(2). But district courts are only required to address the § 3553(a) factors "to the extent that they are applicable." § 3553(a).

<u>United States v. Burleigh</u>, 145 F.4th 541, 547-48 (4th Cir. 2025) (emphasis added).

These principles guide the analysis of Hernandez-Ordonez's motion for compassionate release. As mentioned, Hernandez-Ordonez

8

relies on United States v. McCoy where the Court suggested that the district courts are empowered "to consider any extraordinary and compelling reason for release that a defendant might raise." United States v. McCoy, 981 F.3d at 284. However, that statement is preceded by a significant limiting principle, to-wit: "in the absence of a guidelines policy statement." And, in McCoy, there was no guideline policy statement. Here, however, there is a guideline policy statement and so the "any extraordinary and compelling reasons for release that a defendant might raise" does not apply here. The analysis now turns to assessing the arguments that extraordinary and compelling reasons for compassionate release exist.

## II. The Exhaustion Requirement

To begin, the Court may consider a motion for compassionate release only if the defendant has fully exhausted all administrative rights to appeal the failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from receipt of such a request by the Warden of the defendant's facility whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). If the defendant has administratively exhausted his claim for release or the Government does not contest the exhaustion requirement, the district court will conduct a two-step inquiry to

9

decide whether to reduce the defendant's sentence under the statute. United States v. Bond, 56 F.4th 381, 383 (4th Cir. 2023).

In the *Pro Se* Motion, Hernandez-Ordonez says that: "[s]ince Defendant has already requested a reduction of sentence from the Warden, this requirement has been satisfied [exhaustion], see Exhibit A." (ECF No. 212, p. 2). Exhibit A to the *Pro Se* Motion is not in any respect a request for reduction of sentence. However, Exhibit B is such a request and it recites as follows:

> I am requesting reduction in sentence pursuant to 18 USC § 3582(c)(1)(A) because new case law in the 4th Circuit and in the US Supreme Court have provided clear rulings regarding the validity of my convictions and sentence under 18 USC § 924(c) and (j). Thus, in accordance with the requirements of § 3582, I am first requesting this reduction with the Warden.

(ECF No. 212-2). However, the FIRST STEP ACT AMENDMENT APPLICATION WORKSHEET (ECF No. 216) indicates that "FCI Butner does not have a record of Hernandez-Ordonez submitting a request for compassionate release." Nonetheless, the United States does not contest the assertion that a request was submitted to the Warden. That and Exhibit B permits a finding that a request to the Warden has been made and that there has been no response thereto, thereby satisfying the exhaustion requirement.[5]

---

[5] Exhibit B mentions a change in case law and the *Pro Se* Motion also mentions caselaw changes. However, in neither location is there any discussion of any aspect of any decisional law from the

10

### III. Extraordinary and Compelling Reasons

Now the inquiry turns to whether Herndanez-Ordonez has established the existence of extraordinary and compelling reasons that warrant compassionate release. The Sentencing Commission has issued a policy statement on extraordinary and compelling reasons for compassionate release. It is § 1B1.13(b), and it provides as follows:

> (b) EXTRAORDINARY AND COMPELLING REASONS.[6]—Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
> (1) MEDICAL CIRCUMSTANCES OF THE DEFENDANT
> (2) AGE OF THE DEFENDANT
> (3) FAMILY CIRCUMSTANCES OF THE DEFENDANT
> (4) VICTIM OF ABUSE
> (5) OTHER REASONS.— The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).
> (6) UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

---

Fourth Circuit or the Supreme Court that has any implication to any of the issues raised in the *Pro Se* Motion. Further, the Counsel Motion does not rely on any change in law.

[6] Subsections (1) - (4) have no application to this case so only the titles of the subsections are set out above.

And, § 1B1.13(c) and (d) provide:

> (c) LIMITATIONS ON CHANGES IN LAW.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.
>
> (d) REHABILITATION OF THE DEFENDANT.—Pursuant to 28 U.S.C. § 944(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

U.S.S.G. § 1B1.13(b)(1)-(6), (c), (d).

### IV. Asserted Grounds For Compassionate Release

Both the *Pro Se* Motion and Counsel Motion mention possible risk to exposure to COVID-19. However, neither motion satisfies Hernandez-Ordonez's burden to show that there is a viable risk of exposure or a viable threat to his health or that, in fact, there is any exposure to COVID-19 where he is confined.

The next basis for relief is Hernandez-Ordonez's age. It is true that courts have considered defendants' age in assessing whether to grant compassionate release and whether the age at the time of committing the offense somehow presented an extraordinary

and compelling circumstance. There is real doubt whether that argument is consistent with the policy statement, but the Fourth Circuit has taken age into account and the guidelines are advisory and the decisions of the Fourth Circuit are not. So, age at the time of the offense could be taken into account. However, in this instance, Hernandez-Ordonez was nearly 26 years old when the offense of conviction was committed and there is nothing cited (and the Court knows of no information) that would warrant a finding that a crime committed at that age is subject to the various limitations that apply when crimes are committed in the teen years (or even in the early 20's). So the record here does not establish age as a basis for a finding of extraordinary or compelling reason for compassionate release.

The next issue is rehabilitation. Hernandez-Ordonez presents some evidence of rehabilitation. Of course, it is settled that rehabilitation alone is not grounds for compassionate release. However, rehabilitation can be considered together with other putative extraordinary and compelling circumstances. Guidelines § 1B1.13(d). Here, Hernandez-Ordonez has been awarded certificates for participating in many programs and has earned his GED and he has taken classes which will assist him if he were released. However, as commendable as his rehabilitation efforts are, it is impossible to find that they outweigh the conduct of Hernandez-

13

Ordonez in helping to cause the loss of Osbin Noel Hernandez-Gonzalez's life.

The Counsel Motion makes reference to the "lack of immediate involvement in the crime to which he pled." That statement is difficult to understand given what the STATEMENT OF FACTS admitted respecting Hernandez-Ordonez's actual participation in the crime. He was there to make sure that the younger inductees into MS-13 actually killed Osbin Noel Hernandez-Gonzalez. And, indeed, when they were unsuccessful, and the victim fled, Hernandez-Ordonez followed the victim, calmed him, and brought him back for his execution. On the admitted facts of record, it is just impossible to accept the assertion that there was "lack of immediate involvement in the crime to which he pled."

Finally, there is a conclusory statement on the Counsel Motion that the sentence is overly broad. The Court can find no merit whatsoever in that conclusory statement.

Even if one were to be able to find on this record (which cannot be done) extraordinary and compelling circumstances, the factors in § 3553(a) strongly counsel against the grant of any release here. It is true that there are no criminal history points assessable and only driving and minor offenses on Hernandez-Ordonez's record. However, Hernandez-Ordonez actively participated in effectuating in a very real way one of the most heinous crimes

14

that can be committed and the seriousness of the offense of conviction and the protection of the public and the need to deter Hernandez-Ordonez from further crimes and to achieve general deterrence all augur against granting the motion for compassionate release or finding that the sentence of 365 months is greater than necessary to achieve the sentencing objectives in 18 U.S.C. § 3553(a).

## CONCLUSION

For the foregoing reasons, the DEFENDANT'S MOTION FOR REDUCTION IN SENTENCE PURSUANT TO 18 USC § 3582(c)(1)(A) AND THE FIRST STEP ACT (ECF No. 212) and the DEFENDANT'S MOTION FOR RELEASE AND RELIEF PURSUANT TO SECTION 603 OF THE FIRST STEP ACT OF 2018 AND 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 222) will be denied.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: December 1, 2025